## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

MARGARET MARTINEZ, on behalf   :
of herself and others similarly situated,   :    CIVIL ACTION FILE NO.
                                :
        Plaintiff,                         :
                                  :
v.                                       :
                                  :
HEARD & SMITH, LLP and       :    **COMPLAINT – CLASS ACTION**
DIGITAL MEDIA SOLUTIONS, LLC,   :
                                  :
        Defendants.            :    **JURY TRIAL DEMANDED**
                                  :
_____/

Plaintiff Margaret Martinez ("Plaintiff") (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.     As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in

Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      This case involves a campaign by Heard & Smith, LLP ("Heard & Smith") to market its services through the use of pre-recorded telemarketing calls in violation of the TCPA.

3.      Heard & Smith commissioned telemarketing vendor Digital Media Solutions, LLC ("DMS") to place pre-recorded telemarketing calls to Ms. Martinez and other putative class members without their prior express written consent.

4.      Ms. Martinez also alleges that Heard & Smith and its telemarketers use automated systems to make telemarketing calls into Florida as well as to Florida residents that have placed themselves on the National Do Not Call Registry, and that by doing so, Heard & Smith has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6.     A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7.     Plaintiff Margaret Martinez is a resident of Florida and this District who was located in this District at the time of the calls.

8.     Defendant Heard & Smith, LLP is a Texas limited liability partnership.

9.     Defendant Digital Media Solutions, LLC is a Delaware limited liability company with its principal place of business in this District.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the FTSA claims because they arise from the same call as the TCPA claim.

11.     This Court has jurisdiction over Heard & Smith, LLP because it specifically commissioned telemarketing calls to be sent into Florida and contracted with a telemarketer in Florida to make those calls.

12.     This Court has jurisdiction over DMS because its principal place of business is in this District.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because as calls were made or organized from this District and received in this District.

## **BACKGROUND**

Calls Made Using a Pre-Recorded Message

14.     The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls.  *See* 47 U.S.C. § 227, *et seq*.; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party.  *See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

16.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

17.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

The Florida Telephone Solicitations Act

18.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

19.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

20.     It is also a violation to make a call to a number on the National Do Not Call Registry.

21.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any

5

consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

22.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

23.     Defendants Heard & Smith and DMS are "persons" as the term is defined by 47 U.S.C. § 153(39).

24.     At no point has the Plaintiff consented to receive pre-recorded telemarketing calls regarding Defendants' services prior to receiving the pre-recorded call at issue.

### Call to Plaintiff

25.     Ms. Martinez's cellular telephone number is (904) 844-XXXX.

26.     That cellular telephone number is a residential telephone line used by Ms. Martinez for personal calls.

27.     That telephone number is not associated with a business.

28.     That telephone number has been on the National Do Not Call Registry since September 29, 2018.

29.     Despite that, Ms. Martinez received three pre-recorded telemarketing call from DMS on behalf of Heard & Smith on February 2, 2023.

30.     The calls all began with the same pre-recorded message, "You recently inquired about eligibility for social security disability benefits, are you looking for disability insurance?".

31.     The call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep play when the call recipient began talking (c) the robot had a generic monotone voice.

32.     The Plaintiff then spoke to "Stacy Henley" who identified herself as a disability specialist for Heard & Smith.

33.     "Stacy Henley" offered Heard & Smith's firm services to the Plaintiff, where if the Plaintiff hired them then they could advocate on her behalf to try to attempt to obtain disability benefits for her.

34.     Heard & Smith would then charge a fee for its service.

35.     The Plaintiff had never made a request for such services and was not interested.

36.     As such, she terminated the call.

37.     The Plaintiff then had her attorney send a letter to Heard & Smith.

38.     Heard & Smith responded that DMS made the call.

39.     Despite this, the same pre-recorded message was sent by DMS on behalf of Heard & Smith to the Plaintiff on February 6, 2023.

40.     The call began with the same pre-recorded message, "You recently inquired about eligibility for social security disability benefits, are you looking for disability insurance?".

41.     The call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep play when the call recipient began talking (c) the robot had a generic monotone voice.

42.     The Plaintiff then spoke to "Belinda Manganiello" who identified herself as a disability specialist for Heard & Smith.

43.     "Belinda Manganiello" offered Heard & Smith's firm services to the Plaintiff, where if the Plaintiff hired them then they could advocate on her behalf to try to attempt to obtain disability benefits for her.

44.     Heard & Smith would then charge a fee for its service.

45.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed.  Plaintiff and the Class Members were also harmed by

use of their telephone power and network bandwidth and the intrusion on their

telephone that occupied it from receiving legitimate communications.

## HEARD & SMITH'S VICARIOUS LIABILITY

46.     For more than twenty years, the FCC has explained that its "rules

generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397

¶ 13 (1995).

47.     In 2008, the FCC likewise held that a company on whose behalf a

telephone call is made bears the responsibility for any violations.

48.     The FCC has instructed that sellers such as Heard & Smith may not

avoid liability by outsourcing telemarketing to third parties, such as DMS:

> [A]llowing the seller to avoid potential liability by
> outsourcing its telemarketing activities to unsupervised
> third parties would leave consumers in many cases without
> an effective remedy for telemarketing intrusions. This
> would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the
> United States, as is often the case. Even where third-party
> telemarketers are identifiable, solvent, and amenable to
> judgment, limiting liability to the telemarketer that
> physically places the call would make enforcement in
> many cases substantially more expensive and less
> efficient, since consumers (or law enforcement agencies)
> would be required to sue each marketer separately in order

> to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

49.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

50.    Heard & Smith is liable for telemarketing calls placed by DMS to generate customers for Heard & Smith.

51.    Heard & Smith authorized DMS to send pre-recorded messages and transfer the call recipient directly to Heard & Smith.

52.    Heard & Smith controls the day-to-day activities of DMS's telemarketing for Heard & Smith.

53.    Heard & Smith restricts the geographic footprint into which its telemarketing vendors, including DMS, can cause calls to be made.

54.    Heard & Smith provided the specific criteria for the leads it would accept and required its vendors, including DMS, to adhere to those criteria.

55.    Heard & Smith knew or reasonably should have known that DMS was violating the TCPA on Heard & Smith's behalf but Heard & Smith failed to take effective steps within its power to cause them to stop.

56.    DMS has been named as a defendant in no less than five lawsuits since 2020 alleging that DMS violated the TCPA, including by violating the TCPA's prohibition on making calls using a prerecorded voice to cellular phones without the recipient's prior express consent, and has been involved in more cases as a third-party vendor responsible for calls that violated the TCPA.

57.    DMS has also been the subject of numerous Better Business Bureau ("BBB") complaints alleging TCPA violations, including in connection with calls promoting debt relief, and falsification of opt-in information.

58.    A reasonable seller whose telemarketers are the targets of repeated telemarketing complaints would and should investigate to ensure that its telemarketing complies with the TCPA.

59.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

61.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **TCPA Robocall Class:** All persons within the United States: (1) to whose cellular telephone number (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) from four years prior to the complaint through trial (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.
>
> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call made from or into Florida regarding Heard & Smith's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.
>
> **Florida Telephone Solicitation Act Do Not Call Registry Class:** All persons in the U.S., who, (1) received a telephonic sales call regarding Heard & Smith's goods and/or services, (2) to a number on Florida's no solicitation calls list (3) since July 1, 2021.

62.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of this classes as she has no interests that conflict with any of the class members.

63.     Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

64.     Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

65.     This Class Action Complaint seeks injunctive relief and money damages.

66.     The Class as defined above is identifiable through the Defendants' dialer records, other phone records, and phone number databases.

67.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

68.     The joinder of all Class members is impracticable due to the size of the Class and relatively modest value of each individual claim.

69.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

70.     There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a) Whether the Defendants used pre-recorded message to send telemarketing calls;

(b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(c) whether Defendants' conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

(e) whether Defendant Heard & Smith is vicariously liable for calls placed by telemarketing vendors.

71.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests which are antagonistic to any member of the Class.

72.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this

action on behalf of the other members of the Class, and have the financial resources to do so.

73.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

74.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(b) on behalf of the Robocall Class

75.     Plaintiff incorporates the allegations in paragraphs 1-74 as if fully set forth herein.

76.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

77.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47

U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78.    If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

79.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial
Class**

80.    Plaintiff incorporates the allegations in paragraphs 1-74 as if fully set forth herein.

81.    Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

82.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

83.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

84.     Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

85.     In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

86.     Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

17

87.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

### THIRD CAUSE OF ACTION
**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation**
**Act National Do Not Registry Call Class**

88.     Plaintiff incorporates the allegations in paragraphs 1-74 as if fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act National Do Not Call Registry Class Members against Defendants.

90.     It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone" is on the National Do Not Call Registry. *See* Fla. Stat. § 501.059(4).

91.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or

services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

92.    Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

93.    In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent even though the Class members were on the National Do Not Call Registry.

94.    As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.     Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.


Dated: March 1, 2023          PLAINTIFF, on behalf of herself
and others similarly situated,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881